IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mike Gravel, | Case No. 3:08 CV 487 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| American Leadership Project, | |
| Defendant. | |

**BACKGROUND**

Plaintiff Mike Gravel filed a Complaint (Doc. No. 2) and Motion for a Temporary Restraining Order (TRO) (Doc. No. 3) seeking (1) a declaration that Defendant American Leadership Project's (ALP) distribution of a political advertisement through any television station, cable television station or satellite system in Ohio is unlawful under federal elections law, and (2) to enjoin Defendant from distributing the advertisement.

Plaintiff alleges ALP, a political organization located in San Francisco, California, is a "political committee" within the meaning of 2 U.S.C. § 431(4) and has not registered with the Federal Election Commission (FEC). Registration with the FEC leads to reporting requirements and contribution limitations. ALP published a political advertisement on YouTube that features Senator Hillary Clinton and her legislative record, mentions that Ohio Governor Ted Strickland endorses her "economic blueprint," and encourages viewers to contact Hillary.[1]

---

[1] The full text of the advertisement, as read by the narrator: "If speeches could create jobs, we wouldn't be facing a recession. But it takes more. As senator, Hillary Clinton passed legislation to bring investment and jobs to struggling communities, and worked to end tax breaks for corporations sending jobs overseas. Her economic blueprint is endorsed by Governor Strickland. Tell Hillary to keep working on these solutions for the middle class." (Complaint ¶15).

Plaintiff alleges ALP intends to broadcast this advertisement in Ohio in the days leading up to the presidential primary election on Tuesday, March 4, 2008.  Plaintiff also alleges this advertisement by an unregistered political committee is impermissible "electioneering communication" under regulations promulgated by the FEC.  Accordingly, Plaintiff seeks to enjoin broadcast of this advertisement.

## MOTION FOR A TEMPORARY RESTRAINING ORDER

In evaluating a motion for a TRO, the Court must consider and balance four factors:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant risks immediate and irreparable injury;  (3) whether the issuance of the TRO will harm others; and (4) the public interest.  *See Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).  A TRO is an extraordinary remedy that is granted to preserve the status quo until the Court rules on a preliminary injunction.  *See First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).

## SUBJECT MATTER JURISDICTION

As a threshold matter, this Court must determine whether it has subject matter jurisdiction over the lawsuit.  *Am. Telecomm. Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).  The Supreme Court has foreclosed the possibility of "'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

The Federal Election Campaign Act (FECA), amended in 2002 by the Bipartisan Campaign Reform Act (BCRA), establishes the procedure for challenging the legality of political organizations and advertisements.  Any person who believes a violation of the Act has occurred may file a written complaint with the FEC.  2 U.S.C. § 437g(a)(1).  A party may appeal the FEC's dismissal of an

2

administrative complaint, or its failure to act on the complaint "during the 120-day period beginning on the date the complaint is filed," by filing a petition in the federal district court for the District of Columbia (DC Court). 2 U.S.C. § 437g(a)(8)(A). The method described in the statute is the "exclusive civil remedy for enforcement of the provisions of this Act." 2 U.S.C. § 437d(e).

Plaintiff brings this action in federal court instead of filing a complaint with the FEC, arguing that any administrative filing is futile because the FEC currently has only two members and requires a quorum of four members to act. 2 U.S.C. § 437g(a)(2), (4), & (6); *see also* Mary Jacoby, *Election Agency Lacks Quorum to Rule on Key Issues This Year*, WALL ST. J., Feb. 26, 2008, at A8.

The current inability of the FEC to act **today** does not establish it will not or cannot act within 120 days of Plaintiff filing an administrative complaint. Furthermore, even if Plaintiff exhausted his administrative remedies, § 437g(a)(8)(A) provides that the DC Court is the proper and exclusive jurisdiction to compel the FEC to act on the Complaint. In *Stockman v. FEC*, 138 F.3d 144 (5th Cir. 1998), a member of Congress sued to enjoin the FEC from continuing its investigation of his election campaign, claiming the FEC unduly delayed and protracted the process. The court concluded it lacked subject matter jurisdiction and that the DC Court was the proper court in which to bring the claim. *Id.* at 153 (citing statutory construction principle "*expressio unius est exclusio alterius*" -- to express one is to exclude all others). Although the language in § 437g(a)(8)(C) that "the complainant may bring . . . a civil action to remedy the violation" might suggest an action may be brought in any court, this provision only applies when the FEC refuses to comply with an order from the DC Court. This provision does not apply here because Plaintiff has not filed a complaint with the FEC nor has the DC Court issued any order to the FEC.

3

Plaintiff admits it has not filed a complaint with the FEC but argues it would be futile, because of the FEC's inability to act before the Ohio primary, less than a week away. A federal appellate court that addressed a similar issue held that, nonetheless, federal courts lacked jurisdiction to hear such a lawsuit before the FEC has ruled on a complaint or the 120 days has elapsed. *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996). In that case, candidates who were not invited to participate in televised presidential debates sought an order either to enjoin the debates or require the FEC to act on pending complaints that had not yet reached the 120-day limit. Despite the possibility of irreparable harm that could be caused by excluding a candidate from the debate, the court declined to "ignore these elaborate statutory requirements and force the FEC to act immediately." *Id.* at 558. The court alluded to an earlier opinion of the same court that arguably left open a possible exception for "extraordinary circumstances." *Id.* (citing *In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 543 (D.C. Cir. 1980)). However, the court could not conceive of any circumstances meeting this threshold short of holding the statute unconstitutional, and further held that the Supreme Court's intervening decision in *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) made clear that a congressional mandate to require exhaustion of remedies must be followed. *Perot*, 97 F.3d at 558-59 ("[I]f Congress specifically mandates, exhaustion is required."). Plaintiff offers no persuasive reason to depart from the precedent of *Perot*.

Plaintiff argues Congress did not contemplate a scenario in which the FEC could not act. He tries to distinguish *Perot* and *Stockman* by pointing to the FEC's lack of quorum, which was not at issue in those cases. In both *Perot* and *Stockman*, the courts considered whether Congress contemplated the futility in seeking FEC review when the event or action sought to be enjoined fell within the 120-day window. In *Perot*, the court determined that:

4

> Congress . . . knew full well that complaints filed shortly before elections, or debates, might not be investigated and prosecuted until after the event. Congress could have chosen to allow judicial intervention in the face of such exigencies, but it did not do so. And as we have said, a court is not free to disregard congressional judgment.

*Id.* at 559. Likewise, in *Stockman*, the court cited legislative history for the proposition that "the delicately balanced scheme of procedures and remedies set out in the [FECA] is intended to be the exclusive means for vindicating the rights and declaring the duties stated therein." *Id.* at 154.

Both cases properly observe that Congress could have provided for immediate judicial intervention but instead decided to allow 120 days for the FEC to act without judicial interference. This reasoning applies equally to the instant case. The alleged inability of the FEC to act quickly does not affect this Court's jurisdiction under the Act. The FEC may regain a quorum and act within 120 days of a filed complaint.

During oral argument, Plaintiff pointed the Court toward *Becker v. FEC*, 230 F.3d 381 (1st Cir. 2000). In that case, the court held plaintiffs were excused from filing a complaint with the FEC over their facial challenge of FEC regulations because the statute, **at that time**, did not provide a procedure for exhausting such challenges. *Id.* at 384. The statute now provides for judicial review of the validity of its provisions in § 437h. Instead, the *Becker* court looked to the Administrative Procedure Act and determined that following those provisions would have been futile because the FEC had previously made clear its position that the challenged regulations were valid. *Id.* The instant case is distinguishable because Plaintiff does not challenge the validity of FEC regulations but rather seeks enforcement of an alleged violation of the regulations. The statute provides a definite procedure and spells out the exclusive remedy for enforcement, whereas only immediate judicial review in § 437h applies to constitutional challenges.

5

Plaintiff also cites two cases in arguing for a futility exception to the exhaustion requirement. The first, *McCarthy v. Madigan*, 503 U.S. 140 (1992) actually supports Defendant's position. The court there held that when "Congress specifically mandates, exhaustion is required." *Id.* at 144. As the court in *Perot* observed, § 437g "is as specific a mandate as one can imagine." *Perot*, 97 F.3d at 559. The second, *Constantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994) is also distinguishable because the court there interpreted the Employee Retirement Income Security Act (ERISA) as implying administrative exhaustion but not explicitly mandating it. *Id.* at 974. By contrast, the FECA clearly mandates exhaustion of remedies. This Court does not have the discretion to override the administrative process as Plaintiff urges.

Ultimately, Plaintiff cannot establish that this Court has jurisdiction over his action. His argument that the composition of the FEC presents a compelling reason for the Court to assume jurisdiction misses the mark because, even if the FEC were presently capable of acting on a complaint, it could wait 120 days to act and could order remedies other than injunctive relief restricting distribution of the advertisement. In short, this cause of action is not available to Plaintiff, and, if it were, it is not clear the remedy he seeks would be available.

## **ALTERNATIVE DEFENSES AND THE MERITS**

Defendant also raises whether venue is proper in this District under 28 U.S.C. § 1391, aruging that posting an advertisement on the Internet does not establish sufficient contact with the forum, and further that service was improper or not completed. (Indeed, Plaintiff's counsel had a hard time explaining at the hearing why the Northern District was appropriate over the Southern District.) This argument implicitly raises the defense that Defendant is not subject to the jurisdiction of the court because its contacts with Ohio are insufficient. Federal courts customarily consider subject matter

6

jurisdiction before personal jurisdiction issues. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter . . ."). The Court therefore declines to address personal jurisdiction and venue.

Nor can the Court address the merits, namely whether the advertisement at issue is an impermissible electioneering communication by an unregistered political committee in violation of the federal election laws and the regulations of the FEC. *See* Electioneering Communications, 72 Fed. Reg. 72899 (Dec. 26, 2007) (to be codified at 11 C.F.R. pts. 104 & 114). Under *Steel Co.*, "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the Court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex Parte McCardle*, 7 Wall. 506, 514 (1868)). The Supreme Court acknowledged extraordinary situations in which a court might address the merits before determining subject matter jurisdiction, but confined this exception to cases with unusual procedural postures, none of which apply here. *Id.* at 1014-16.

## CONCLUSION

Plaintiff cannot avoid the FEC by taking a shortcut through the federal courts, even if Plaintiff believes the required statutory procedure will take him nowhere. Congress has made it clear where he must start his journey, and that is at the steps of the FEC, not the Toledo courthouse. Plaintiff's Motion for Temporary Restraining Order is denied, and the Complaint is dismissed without prejudice.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 29, 2008

7